**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KIM RALSTON,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.:** |
| | * | |
| **US HELICOPTER,** | * | **1:09CV379** |
| | * | |
| **Defendant.** | * | |

**US HELICOPTER'S REPLY TO PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, US Helicopter, and files this Reply to Plaintiff's Response in

Opposition (doc. # 39; 41) to US Helicopter's previously filed Motion for Summary Judgment

(doc. #26)[1].

## I.     INTRODUCTION.

US Helicopter filed for summary judgment on February 17, 2010 (doc. # 26).   After

requesting and receiving a continuance, Ms. Ralston submitted her response in opposition to

summary judgment on April 9, 2010 (doc. #39).  Because of numerous deficiencies in her filing,

including failure to properly cite (or to cite at all in some instances) and several

spelling/grammatical errors, Ms. Ralston filed her "corrected" response brief on April 12, 2010

(doc. #41).

US Helicopter now submits the instant reply brief.  In doing so, US Helicopter maintains

that summary judgment remains due to be granted as to all of Plaintiff's claims in this case.

Specifically, there are no material issues of fact with regard to Ms. Ralston's claims for

---

[1] US Helicopter is simultaneously filing an Objection and Motion to Strike the self-serving Affidavit submitted by Plaintiff in support of her opposition to US Helicopter's Motion for Summary Judgment.

1

discrimination, retaliation and hostile work environment brought pursuant to Title VII, 42 U.S.C. §2000(e) *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981(a) ("Title VII") and for violations of the Equal Pay Act of 1963, 29 U.S.C. §206(d) ("EPA").

**II.   ARGUMENT**

**A.   MS. RALSTON HAS FAILED TO CREATE AN ISSUE OF FACT TO DEFEAT US HELICOPTER'S MOTION FOR SUMMARY JUDGMENT AS TO MS. RALSTON'S DISCRIMINATION CLAIMS.**

In her response brief, Ms. Ralston breaks down her discrimination claims into the following two (2) categories: alleged disparate treatment (purportedly shown by circumstantial evidence) and alleged discriminatory pay practices. Each of these claims are addressed, in kind, below.

**1.   Alleged Disparate Treatment / Termination**

Ms. Ralston acknowledges that this is a case of alleged disparate treatment "supported by circumstantial evidence", as opposed to direct or statistical evidence (doc. #39, p. 44)[2]. Thus, US Helicopter will not reiterate its arguments regarding direct or statistical evidence (or lack thereof in this case). As for the supposed indirect evidence of discriminatory practices, Ms. Ralston points to the following incidents:

---

[2] Confusingly, after making this statement, Ms. Ralston later asserts that she can, in fact, present "direct evidence" of discrimination because her supervisor, Brent Hohbach, stared directly at her in a meeting and stated that he "was going to fire someone soon (doc. #39, p. 46). Nothing further is argued on this point. This mere self-serving belief of discrimination, without more, is not sufficient to constitute direct evidence of discrimination. See Elrod v. Sears Roebuck & Company, 939 F.2d 1466, 1470 (11th Cir. 1991); Chapman v. AI Transport, 29 F.3d 1012, 1030 (11th Cir. 2000)(en banc.)(plaintiff cannot "substitute [her] business judgment for that of the employer."). Regardless, Ms. Ralston fails to cite to Mr. Hohbach's perfectly rationale explanation for this statement from his deposition, where he explained that he never indicated in any meeting that he held when he took over the supervisory role that a specific person was going to be terminated; instead, at one meeting, there was a general comment made while looking at all of the foremen in the room in regards to a rule violation (and potential termination for such). (Deposition of Brent Hohbach, p. 78, line 19 – p. 80, line 22, attached as Exhibit "JJ").

2

### a.     February 23, 2003 Complaint to Dick Joyce.

Ms. Ralston initially argues that a February 23, 2003, complaint to the former owner of the company (Mr. Joyce) constitutes evidence of discrimination. However, this hand-written document simply contains a general, generic statement that "Yes, Sometimes!" in response to a question about whether she believed she had ever been the victim of harassment in the workplace. There are no specific incidents of discrimination or harassment provided. Again, Ms. Ralston's own, self-serving belief of discrimination is not sufficient. Moreover, it was stated in this memorandum that she was reporting to someone else and not to the individual who allegedly was harassing her. Ms. Ralston provides no authority relative to how an isolated incident, which was remedied by her employer, supports her claim of discrimination.

### b.     February 23, 2004 Complaint to George Evans.

Exactly one year later, Ms. Ralston asserts that a February 23, 2004 complaint she made to Mr. Evans describing an incident involving a co-worker (Larry Anderson) constitutes evidence of discriminatory practices. Ms. Ralston wrote a memorandum to Mr. Evans complaining that Mr. Anderson had used loud, "ugly" talk to her. Ms. Ralston is simply describing her perception of Anderson's tone, but makes no mention as to how Mr. Anderson's tone could be construed as harassment or discrimination. Nothing else regarding this issue is provided; indeed, there is nothing specific in any way suggesting discrimination or harassment given to support this claim.

Moreoever, Teri Griffin provided a statement regarding this incident involving Ms. Ralston and Mr. Anderson. Ms. Griffin specifically noted in her statement that it was both Ms. Ralston and Mr. Anderson who needed to quit arguing and that <u>both were at fault</u>. Mr. Anderson

in fact apologized to Ms. Griffin for his tone of voice towards Ms. Ralston. Ms. Griffin makes no mention that Ms. Ralston did the same.[3]

### c.    February 25, 2004 Complaint to Kim Durden

Here, Ms. Ralston again raises the confrontation with Mr. Anderson and states that the human resources director (Kimberly Durden) noted that Ralston "feels that she is being counseled because she is a woman and that she is working in a hostile environment". However, contrary to Ms. Ralston's assertions, other males, including Mr. Anderson, were counseled in regards to incidents such as this.[4] Specifically, Mr. Anderson was counseled for cursing at Ralston. Id. Again, no specific evidence of discrimination or harassment is provided. Quite simply, Ms. Ralston was counseled on this date because she exceeded the authority of her position and because she had been counseled on other occasions.[5]

### d.    August 2, 2006 Complaint to Kim Durden about Kevin Brion.

Ms. Ralston also points to an e-mail complaint she made complaining that another co-employee (Kevin Brion) said that he could not get a "fucking" thing done over in her work area. Yet again, there are no specific incidents of discrimination referenced; rather, this complaint arose out of a generic curse word stated to the entire area (not directed specifically to Ms. Ralston). For all anybody knows, the comment could have been directed to a male in the vicinity of where it was made in the Production Hub area where several employees, male and female, worked. See Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013 (11th Cir. 2008). In any case, while it may be inappropriate for any individual, male or female, to use language like this in the workplace setting (or otherwise), this does not mean that Ms. Ralston was

---

[3] See February 23, 2004 statement from Terri Griffin, Bates Labeled Ralston v. USH 0064.
[4] See Record of Counseling for Larry Anderson, Bates Labeled Ralston v. USH 830, attached as Exhibit "GG; and Deposition of Kim Durden. p. 167, line 12-13, attached as Exhibit "II".
[5] See Letter of Suspension, Bates Labeled Ralston v. USH 0066.

somehow subjected to gender discrimination as a result of the comments, particularly given the context in which they were made, i.e., in a group setting rather than specifically to her.

<blockquote>

**e.   Complaints to George Evans about not being allowed to attend production meetings.**

</blockquote>

Ms. Ralston also asserts, in support of her disparate treatment allegations, that she was not allowed to attend production meetings, despite her status as the Production Control Hub Foremen.   As explained in US Helicopter's original brief, there were legitimate, non-discriminatory reasons for Ms. Ralston not being included in all production meetings.   Indeed, Mr. Hobach testified that he would hold production meetings when he was the Production Control Foreman and not every foreman would attend these meetings.   Mr. Hobach also explained that not every foreman would attend the Production Control meetings, and, when asked specifically about Ms. Ralston, Mr. Hohbach explained that Ms. Ralston did not attend these Production Control meetings because she had other work to be completed and her direct supervisor, George Evans, attended the meetings and could provide any necessary information.[6]

Furthermore on this point, her former supervisor, Kevin Cordes, likewise stated in his deposition that who attended the production meetings was determined by a number of factors, including work-load.[7]   In addition, Mr. Cordes stated that who ordinarily came to the meetings varied and that this "depend[ed] on...the issues at hand."   Id. at 39:7-13.   In other words, "different people [attended] at different times, depending on what was important for that particular time period."[8]   Irrespective of that testimony, the fact that "different supervisors may have different management styles that – while not determinative – could account for the disciplinary treatment that employees experience."   Jones v. Bessemer-Carraway Medical

---

[6] Deposition of Brent Hohbach, p. 53. line 19-22; p. 55, line 8-56; p. 82, line 2-6, attached as Exhibit "JJ".
[7] Deposition of Kevin Cordes, p. 38:21- p. 39, line 13; p. 40, line 13-20, attached as Exhibit "KK".
[8] Id.

Center, 137 F.3d 1306, n. 7 (11th Cir. 1997); see also Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989)("the Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001)("differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination); Jones v. Alabama Power Company, 2007 WL 3496720 (M.D.Ala. 2007)(noting that different supervisors may have different disciplinary decisions); Pastures v. Potter, 2009 WL 4781811, *6 (S.Ga. 2009)("Court puts some weight into the fact that different individuals were in supervisory roles when [the alleged comparator] was disciplined, making his situation even less comparable..."); Nwaogu v. Wellstar Health System, Inc., 2007 WL 2479277, *7 (N.D.Ga. 2007)(addressing the inadmissibility and insufficiency of the plaintiff's "declaration" similar to the one given by Ms. Ralston here in opposition to summary judgment and discussing different supervisors/managing styles); Caruso v. City of Cocoa, Florida, 260 F.Supp. 2d 1191, 1213 FN140 (M.D.Fla. 2003)(noting that different disciplinary measures under different managing styles cannot be compared).

At US Helicopter, clearly different supervisors had different ways of handling attendance at production meetings and administering disciplinary practices. The fact Ms. Ralston did not attend every production meeting under Hobach alone, therefore, cannot constitute evidence of discriminatory motive or practice.

### f.      Complaints to Falkenstein in 2007.

Ms. Ralston also references complaints about not being allowed to attend production meetings to Lou Anne Falkenstein in 2007.  However, as explained above, this is not sufficient to support a *prima facie* case of discriminatory practice.

### g.      Complaints at the time of her termination in 2008.

US Helicopter does not dispute that Ms. Ralston made written complaints of discrimination in her response to her termination of March 28, 2008 while at the meeting.  In fact, US Helicopter maintains that this was the first (and only) time that she ever made any specific allegations of discriminatory practice or conduct while employed at US Helicopter.  Of course, these statements are, again, examples of her own subjective feelings regarding discrimination rather than actual evidence of such; this alone is not sufficient to survive summary judgment in the face of US Helicopter's legitimate, non-discriminatory reasons for her termination (discussed in its original brief and more fully below).  See Elrod v. Sears Roebuck & Company, 939 F.2d 1466, 1470 (11th Cir. 1991); Chapman v. AI Transport, 29 F.3d 1012, 1030 (11th Cir. 2000)(*en banc.*).  In addition, Lou Ann Falkenstein, the Director of Human Resources at the Corporate Office testified that she did investigate these complaints.[9]

### h.      Other alleged discriminatory conduct.

Ms. Ralston also alleges that she was discriminated against, as shown by the fact that her supervisor, George Evans, was not terminated for failing to complete an assignment; specifically, failing to write a work instruction "that he was instructed to write [by Brent Hohbach]" (doc. #39, pp. 14-16; 44-46).  However, Mr. Evans had delegated this assignment to his employee, Kim Ralston, to complete.  Instead of doing her job as instructed by her boss, she refused to

---

[9] Deposition of Lou Ann Falkenstein, p. 145, line 7-10; p. 146, line 15-22, attached as Exhibit "LL"; Memorandum of Record, Bates Labeled Ralston v. USH 0081, attached as Exhibit "PP".

7

complete the assignment.[10]   This cannot be sufficient to make out a *prima facie* case of intentional sex discrimination against Ms. Ralston.  Furthermore, <u>Ms. Ralston admits in her Affidavit that she refused to assist her supervisor with this task</u>.

Ms. Ralston also states that women were not in authority positions at US Helicopter in an apparent attempt to show discriminatory practice.  However, the fact remains that Ms. Ralston herself was selected to a foreman position after these alleged acts of discrimination were conducted against her.  Furthermore, Mr. Cordes testified there were females working in director or managing positions at U.S. Helicopter in both human resources (Kim Durden), supplies (Trish Donahue) and contracts (Brenda Ring).[11]  Ms. Durden expressly pointed out in her deposition that, as the HR director, she was in an equivalent position to Brent Hohbach and he was not her boss.[12]  Finally, a <u>female</u> ultimately was selected to fill the PC Hub Foreman position on a full-time basis after Ms. Ralston's termination was affirmed.[13]

Ralston asserts other incidents of discriminatory practice in her Complaint, such as the fact she supposedly was not selected for various promotions (even though she was), and was not allowed to wear blue jeans compared to other male workers (even though supervisors in the Hub area were allowed to wear US Helicopter uniform collared, knit shirts and pants or dress clothes.[14]  These allegations are not raised in her responsive filing.  Finally, as noted above, Ms. Ralston also asserts that Hohbach stared directly at her in a meeting and stated that he "was going to fire someone soon (doc. #39, p. 46).  Ms. Ralston fails to cite to Mr. Hohbach's perfectly rationale explanation for this from his deposition, where he explained that he never

---

[10] Deposition of Brent Hohbach, p. 115, line 8-22; p. 121, line 5-9, attached as Exhibit "JJ".
[11] Id. at p. 51, line 9-16; p. 52, line 3-8.
[12] Deposition of Kim Durden, p. 134, line 13-18, attached as Exhibit "II".
[13] Deposition of Kim Durden, p. 113, line 13-20, attached as Exhibit "II".
[14] See Plaintiff's Complaint, Ex. "AA".

indicated in any meeting that he held when he took over the supervisory role that a specific person was going to be terminated; instead, at one meeting, there was a general comment made while looking at all of the foremen in the room in regards to a rule violation (and potential termination for such).[15]   In any case, her own, subjective belief about Hohbach's purported motive is not sufficient to survive summary judgment.  See Elrod, supra; Chapman, supra.

### 2.   US Helicopter had Legitimate, Non-Discriminatory Rationale for Terminating Ms. Ralston's Employment.

As established in US Helicopter's original brief, even if Ms. Ralston could somehow present a *prima facie* case of intentional discrimination, US Helicopter can provide an honest explanation for its termination of Ms. Ralston.  Stated differently, US Helicopter is still entitled to summary judgment as it can articulate legitimate, non-discriminatory reasons for her termination.

#### a.   Plaintiff's Numerous Counselings and Disciplines

Plaintiff was disciplined for failing to follow instructions on April 3, 2003 after a "heated discussion" with a co-employee, Larry Anderson[16].  Shortly thereafter, she received a Letter of Warning on July 24, 2003,  that was forwarded to Human Resources about continued inability to interact with her co-employees[17].  She received a formal Letter of Suspension on February 24, 2004, for yet again not following instructions; specifically, the mandate from July 24, 2003, to properly interact with co-employees and follow instructions[18].  Though Plaintiff states otherwise, Mr. Anderson had also been reprimanded regarding confrontations with co-workers[19].

---

[15] Deposition of Brent Hohbach, p. 78, line 19 – p. 80 line 22, attached as Exhibit "JJ".
[16] Deposition of George Evans, p. 26, line 9 – p. 27, line 9, attached as Exhibit "NN".
[17] See Letter of Warning, Bates Labeled Ralston v. USH 0060, Exhibit "G".
[18] See Letter of Suspension, Bates Labeled Ralston v. USH 0065-66, Exhibit "H"; and Plaintiff's Exhibit 23.
[19] See Record of Counseling for Larry Anderson, Bates Labeled Ralston v. USH 830, attached as Exhibit "GG; and Deposition of Kim Durden, p. 167, line 12-13, attached as Exhibit "II".

Ralston was then suspended for three (3) days on May 15, 2006[20]. There are a number of reasons for the suspension, as set forth in the document; however, Plaintiff primarily takes issue with the fact that Ms. Ralston was suspended, in part, for comments she made about the company's management, including its General Manager/Vice President of Operations, Willie Wilson, "putting on a dog and pony show"[21]. First, Mr. Wilson testified that, in the context of making such a statement against the President and General Manager of the company, he considered the comments derogatory in nature[22]. Second, there is testimony in this case from other individuals who believed that, at that time and in the context in which the comments were made, the statements were derogatory in nature[23]. Irrespective of that point (or of what others feel about the statements), the key is that the person who signed off on the May 15, 2006 documentation of these incident(s) felt like all of the noted comments, at that time and in the context they were used, were derogatory, malicious, intimidating, and disparaging in nature,[24] and, therefore, warranted a second suspension.

In any case, Ms. Ralston was counseled again two and a half months after the May suspension, on August 8, 2006, for "an uncontrolled outburst of words"[25]. Finally, Ms. Ralston was written-up again on March 4, 2008, for insubordination when she refused to follow her supervisor's direct instructions[26]. Thus, it is undisputed that Brent Hobach was presented with ample evidence of employee-related issues involving Ms. Ralston, including, but not limited to,

---

[20] Doc. 26-9.
[21] Id.
[22] Deposition of Willie Wilson, p. 19, line 11 – p. 20, line 1; p. 23, line 5-11, attached as Exhibit "OO."
[23] Deposition of Kim Durden, p. 7, line :9-23; p. 89, line 13 – p. 9, line 2, attached as Exhibit "II."
[24] Deposition of Willie Wilson, p. 19, line 11-20; p. 23, line 5-11; p. 29, line 4-22; p. 32, line 19-33; p. 39, line 1 – p. 40, line 2; p. 41, line 6-7; p. 49, line 15 – p. 50, line 9, attached as Exhibit "OO"; see also Doc. 26-9.
[25] Deposition of George Evans, p. 31, line 21 – p. 32, line 5, attached as Exhibit "NN"; see also Plaintiff's Exhibit 21.
[26] Doc. 26-17.

the March 4, 2008 insubordination, two (2) Letters of Suspensions, two (2) Letters of Warning, and three (3) verbal warnings.[27]

### b.    Overall Summary

Ms. Ralston acknowledges these counseling incidents and disciplines in her response brief (doc. #39, pp. 10-13).  Though she may dispute the rationale for these decisions, the fact remains that US Helicopter's burden is "exceedingly light" on this point and is "merely one of production, not proof."  Smith v. Alabama, 252 F.Supp. 2d 1317, 1327 (M.D.Ala. 2003).  Ms. Ralston cannot "take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules"; thus, an employer's reasons for its actions may be a good reason, bad reason, a mistaken reason, or no reason at all, as long as the decision was not based on gender, reprisal or other unlawful discriminatory criteria.  Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984); see also Dickinson v. Spring Hill Hospitals, Inc., 397 F.Supp.2d 1337, 1343 (11th Cir. 2005).  An employer is not required to prove that its decision was correct; rather, the trier of fact need only to determine that the US Helicopter acted in good faith and that the asserted reason for the action was not a mere pretext for discrimination.[28]

A "Plaintiff is not allowed to recast an employer's proffered non-discriminatory reason or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on, and rebut it, and the employee can not succeed by simply quarreling with the wisdom of that reason

---

[27] See Deposition of Brent Hohbach, p. 85, line 14-23, attached as Exhibit "JJ".   When discussing these prior disciplinary incidents, Ms. Ralston mentions the fact that she was supposedly told that employee disciplinary records would be "wiped clean" in June of 2005 when Bell bought US Helicopter (doc. #39, pp. 41-42).  However, Kim Durden testified that it was simply a routine matter for all employees of the old company to re-apply for their respective positions when Bell took over in 2005; nothing was ever mentioned about wiping records clean. Deposition of Kim Durden, p. 21, line 7 - p. 23, line 15, attached as Exhibit "II".

[28] Id.

[as Ms. Ralston does repeatedly in her brief]." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)(emphasis added). Thus, US Helicopter need only show that it honestly believed that Ms. Ralston's past conduct warranted her termination; here, Hobach explained that these numerous prior incidents formed the basis for his decision to terminate Ms. Ralston in this instance.[29] The clear and legitimate rationale discussed above for the adverse action taken against Ms. Ralston is sufficient to carry US Helicopter's burden of proof.

### 3.   Alleged Pretext

Ms. Ralston alleges that the aforementioned legitimate, non-discriminatory basis for her termination was mere pretext for discriminatory motive. It is important to reiterate that Ms. Ralston's burden of proof is much stronger; indeed, she must show "significantly probative evidence" of pretext to sustain her claims of discrimination. See Mauter v. Hardee Corporation, 825 F.2d 1554, 1557 (11th Cir. 1987).

### a.   Job Performance

In doing so, she initially points to the lack of complaints about her actual job performance and favorable evaluations from George Evans. Of course, the logical viewpoint regarding the evaluations is that, if George Evans was so discriminatory toward her, why in the world would he be giving her favorable job performance evaluations? It seems that the opposite would be true; that being, that the evaluations would be terrible and state that she was not doing a good job (assuming discriminatory motive ever, in fact, existed). Nevertheless, Ms. Ralston conveniently fails to acknowledge that many of these same favorable job performance appraisals also contain

---

[29] Deposition of Brent Hohbach, p. 85, line 14-23, attached as Exhibit "JJ".

specific written notations indicating that she had difficulty, and problems working, interacting and getting along, with her co-employees.[30]

For example, on May 15, 2006, Mr. Evans completed a Performance Appraisal and noted that Ms. Ralston tended to be argumentative and confrontational; in addition, Mr. Evans wrote an attachment to Ms. Ralston's appraisal regarding her attitude in the work force.[31]   Of course, this is also confirmed by her prior discipline incidents.   Given the ample evidence presented regarding her past conduct, good evaluations regarding one aspect of her work alone cannot show evidence of pretext.

### b.      Replacement Employee

Ms. Ralston also references the fact that, after she was terminated, "Bobby Gunter, a male who lost his foreman's job because there was no work [sic] for him, took her place temporarily until the position was filled permanently" (doc. #39, p. 17).   Again, in doing so, she conveniently leaves out the fact that Mr. Gunter only stayed in the position during Ms. Ralston's administrative leave while the job was posted, interviews completed, and an offer was made.[32] As indicated, another _female_ was ultimately selected to take on the PC Hub Foreman position on a full-time basis following her termination.[33]

### c.      Plaintiff's Attack on the Credibility of Hobach and Durden

Finally, in a desperate attempt to demonstrate the allegedly pretextual nature of US Helicopter's employment decision to terminate her, Ms. Ralston points to the "compromised credibility of Brent Hobach and Kim Durden"; specifically, that the two were involved in an

---

[30] See Ralston's Job Performance Evaluations dated April 15, 2003 through May 15, 2006, Bates Labeled Ralston v. USH 13-15, 23, 35-27, 30, attached as Exhibit "HH".
[31] See Defendant's previous Evidentiary Submission, Exhibit "L".
[32] Deposition of Brent Hohbach, p. 94, line 14-19, attached as Exhibit "JJ".
[33] Deposition of Kim Durden, p. 113, line 13-20, attached as Exhibit "II".

inappropriate sexual relationship while employed at US Helicopter (doc. #39, pp. 17-19; 45-46). At the outset, the relevance of this to Ms. Ralston's claims of sex discrimination is unclear to say the least. Ms. Ralston was <u>not</u> the individual responsible for formally making a complaint to management alleging an inappropriate relationship, though she mentioned some "rumors" to that effect in passing to Lou Anne Falkenstein.[34] Indeed, Ms. Ralston testified that she did not see the two engaged in any inappropriate activity and that, while working at US Helicopter, she did not know that Hobach and Durden were having an affair[35].

Moreover, neither Hobach, nor Durden, were (and still are not) aware of who formally lodged an official complaint alleging this inappropriate sexual relationship.[36] It is axiomatic, therefore, that this incident played no part whatsoever in the decision to terminate Kim Ralston.[37]

**B.    AS A MATTER OF LAW, MS. RALSTON CANNOT ESTABLISH HER CLAIM FOR DISPARATE TREATMENT IN TERMS AND CONDITIONS OF EMPLOYMENT/HOSTILE WORK ENVIRONMENT.**

Ms. Ralston alleges that she "experienced a pattern during her employment at US Helicopter in which she would be disciplined after she complained about the discriminatory behavior of the male employees, or disciplined for otherwise unfounded reasons, culminating in her termination." (doc. #39, p. 36). In support thereof, Ralston simply repeats her discussion from pp. 7-13 in her brief regarding complaints she made, and disciplines she received, at various times; Defendant addresses each of these supposed complaints and disciplines, in separate detail, on pp. 2-8 of the instant brief. Also to support this accusation, Ms. Ralston

---

[34] Deposition of Lou Ann Falkenstein, p. 75, line 18- p. 76, line 7; p. 81, line 19 – p. 82, line 1; p. 92, line 10- p. 93, line 13, attached as Exhibit "LL".
[35]  Deposition of Kim Ralston, p. 39:6-10; 40:10-17.
[36] Deposition of Brent Hohbach, p. 61, line 13-21, attached as Exhibit "JJ"; Deposition of Kim Durden, p. 61, line 3-17, attached as Exhibit "II".
[37] The attempt by Ms. Ralston to interject irrelevant and immaterial discussion, such as this, is certainly not surprising given her attorney's use of unprofessional, explicit and inappropriate language during the deposition of Kim Durden. Specific examples of this inappropriate conduct by Ms. Ralston's counsel are attached as Exhibit "II", Deposition of Kim Durden, pp. 136. line 1 – 153, line 23.

14

makes a number of self-serving statements about various remarks that were supposedly made in her presence about this being a "male" environment and "just how things are done in the military" (doc. #39, pp. 36-43).  Of course, there is no actual evidence presented to back these purported statements up.  In any case, Ms. Ralston's Declaration containing these purported comments, many of them hearsay material, is due to be stricken, as argued in US Helicopter's contemporaneously filed Objection and Motion to Strike Ms. Ralston's Affidavit.

### 1. __Alleged Disparate Treatment in the Terms and Conditions of Her Employment[38]__.

Plaintiff states that the issues in this case are "whether the conduct alleged to have pervaded [US Helicopter] created a hostile work environment that 'exposed [Ralston] to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed.'"  (Doc. #39, p. 34), *quoting* Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010).  In doing so, Ms. Ralston again merely quarrels with the wisdom and rationale for her counseling and disciplinary incidents spanning from 2003 through her termination in 2008 (doc. #39, pp. 36-42).  As stated above, Defendant previously discussed each of the respective counselings and disciplines Ms. Ralston received on pp. 9-10 of this brief and will not repeat the same here.  As before, she merely presents subjective opinions attempting to discount each disciplinary action.  Id.

One additional issue Plaintiff raises at this juncture, when discussing her Pre-July of 2003 complaints and disciplines, is that "there is no indication that either [Dick] Joyce or Ralston were

---

[38] Defendant acknowledges that harassment does not have to actually be sexual in nature to be considered unlawful; however, Defendant maintains, as explained throughout its filings to date and in this Reply Brief, that Plaintiff cannot put forth sufficient evidence that she was ridiculed or treated inferior because she was a female.  The cases cited by Plaintiff simply stand for this proposition that unlawful conduct can go beyond harassment that is just sexual in nature.  (Doc. #39, pp. 33-35).  Again, Defendant does not dispute that legal principle, per se; instead, it challenges the sufficiency of the evidence presented by Plaintiff relative to her allegations of disparate treatment because she is a female.

trained to know what the law requires employers to do in order to keep their workplaces free from sex/gender discrimination so as to prevent a hostile work environment." (Doc. #39, p. 39). However, she goes on to make a blanket statement that "Defendant has offered no evidence <u>of any such training</u> [regarding how to protect against, and prevent, sex/gender discrimination in the workplace] <u>of its managers and supervisors</u>." (Doc. #39, p. 39)(emphasis added).   <u>This statement is blatantly and absolutely false.</u>   For example, Kim Durden testified that she received training, including seminars and courses, relating to labor laws, age discrimination, sexual harassment, and exercising hiring practices in a manner that is not discriminatory[39].   In addition, as HR Director, she received instruction, and training, in compliance about Federal laws concerning anti-discrimination/harassment practices and procedures[40].   Hobach testified that all managers and supervisors at the company were required to complete a series of policies and training materials on an annual basis[41].   This training included instructions regarding discrimination, race, gender, religion, equal opportunity, and fair treatment of company employees[42].   Finally, George Evans testified that there was a general rule at US Helicopter about gender harassment/discrimination that it would not be tolerated and he personally, like the others above, received direct instructions and training regarding the prevention of gender harassment in the workplace[43].

In any case, not surprisingly, Ralston also fails to make mention of the fact that other employees, including males, were also disciplined for similar incidents; for example, directly contrary to Plaintiff's inaccurate assertions, Larry Anderson received a warning for inappropriate

---

[39] Deposition of Kim Durden, p. 25, line 9-17; p. 26, line 20 – p. 27, line 19.
[40] Deposition of Kim Durden, p. 32, line 7-16.
[41] Deposition of Brent Hobach, p. 40, line 4-17; p. 41, line 12 – p. 42, line 6.
[42] Deposition of Brent Hobach, p. 42, line 11-14; p. 43, line 13 – p. 44, line 1.
[43] Deposition of George Evans, p. 39, line 19 – p. 40, line 1; p. 41, line 9 – p. 42, line 6.

behavior and language relating to an incident involving Ms. Ralston[44].   Finally, she attempts (unsuccessfully) to create an environment wherein she was purportedly cursed at by men on an almost weekly basis and treated repeatedly with condescension and disrespect, though, of course, no specific incidents of this alleged harassment are given outside of her own generic, improper and self-serving Affidavit statements to this effect.

Quite simply, Ralston has wholly failed to present any actual evidence of such repetitive or disparaging conduct directed at her because of her gender.   She also ignores the fact that much of the alleged wrongful conduct she mentions (for example the cussing incident by Kevin Brion) was stated in a group setting where males were present as well.   Lastly, she ignores the fact that she was selected for a promotion (and offered another promotion which was declined) in this supposed "disrespectful and condescending" environment.   Ms. Ralston additionally claims she was denied certain privileges and responsibilities of her position as a foreman in the PC department; specifically, that she was not allowed to attend production meetings that other foreman attended (doc. #39, p. 43).   The rationale for why she did not attend all production meetings is explained at length on pp 5-6 of this Reply Brief.[45]   Despite Ms. Ralston's contentions, legitimate rationale and disciplinary action was exercised in each instance, as explained in the respective written reports and in deposition testimony regarding the production meetings.   Further, as explained above, male employees (including Larry Anderson) were disciplined in the same manner for inappropriate behavior in the workplace.

### 2.   Hostile Work Environment Analysis

---

[44] See Record of Counseling for Larry Anderson, Bates Labeled Ralston v. USH 830, attached as Exhibit "GG; and Deposition of Kim Durden. p. 167, line 12-13, attached as Exhibit "II".

[45] Ms. Ralston agrees with her evaluations which have positive remarks about the quality of her work but disagrees when her ability to interact with co-workers is criticized.

A hostile work environment must be viewed both objectively <u>and</u> subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.  <u>See</u> <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir. 1999); <u>Hipp v. Liberty Nat. Life Ins. Co.</u>, 252 F.3d 1208, 1231-32 (11th Cir. 2001); <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 114 S.Ct. 367, 370 (1993)(stating that, for purposes of a hostile work environment claim, only when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the employment and create an adverse working environment" is the law violated).  Ralston sets forth no specifics in her brief regarding: (1) the frequency of the alleged wrongful conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interfered with the employee's work performance.  <u>See</u> <u>Mosley v. Meristar Management Co.</u>, 137 Fed. Appx. 248, 252 (11th Cir. 2005)(internal citations omitted)(holding that "isolated or sporadic" incidents are insufficient to establish a hostile work environment claim); <u>Mendoza</u>, 195 F.3d at 1246-47 (court undertook an exhaustive search of cases around the country and noted that "[m]any decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious and more serious than the conduct at issue in this appeal"; court ultimately held that "the conduct alleged by [the plaintiff] falls well short of the level of either severe or pervasive conduct sufficient to alter [the plaintiff's] terms or conditions of employment").

Ralston has presented nothing but subjective opinions about the alleged discriminatory nature of the workplace at US Helicopter.  Any supposed objective evidence, to exist if can even be said to exist, certainly does not rise to the level of "conduct...sufficiently severe or pervasive

enough to alter [her] terms or conditions of employment..."  In fact, to the contrary, Ralston continued to work a number of years at the company, was eventually promoted, and even asked to not be let go at the date of her termination (which is illogical if the conditions were so bad that it affected her daily performance).  Indeed, according to statements drafted by Hobach and Durden at the time of her termination, Ralston "pleaded to not be terminated" and "said that she would do whatever she needed to do to keep her job..."[46]

As such, this claim is due to fail as a matter of law.  See, e.g., Potts v. Conecuh-Monroe County's Gas District, 2000 WL 1229838 (S.D.Ala. 2000); Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005); Harrison v. Montgomery County Board of Education, 2006 WL 625876  (M.D.Ala. 2006); Baker v. Alabama Department of Public Safety, 296 F.Supp. 2d 1299 (M.D.Ala. 2003); Evans v. Pemco Aeroplex, Inc., 1998 WL 1048470, *13-14 (N.D.Ala. 1998); Gullatte v. Westpoint Stephens, Inc., 100 F.Supp. 2d 1315 (M.D.Ala. 2000).

### C.   MS. RALSTON'S TITLE VII DISCRIMINATION AND EQUAL PAY ACT CLAIMS ARE DUE TO BE DISMISSED AS A MATTER OF LAW.

#### 1.   Disparate Treatment in Pay Under Title VII

Ms. Ralston claims she was intentionally discriminated against because she was paid less as a PC Foreman than two "comparators": George Evans and Ed White.  US Helicopter will address each individual separately.  However, initially, it is important to note that, according to Kevin Cordes, Ms. Ralston was never told any specifics of her salary before being offered the position or that she would, in fact, receive a base salary of $48,000/year when she was promoted

---

[46] See Memorandum of Kim Durden and statement of Brent Hobach, attached to Defendant's Supplemental Evidentiary Submission as Exhibits "QQ" and "RR".

to foreman.[47]  In fact, Mr. Cordes explained that he would not be in a position to know the details and circumstances about what the salary would be for somebody selected to this position.  Id.

Moreover, US Helicopter has articulated a perfectly legitimate, non-discriminatory basis for her starting salary; that being, that she had no prior supervisory experience at US Helicopter and, therefore, she would be evaluated at a six (6) month interim to gauge her performance in this new role.  Ms. Durden even testified that she hoped this [promotion to foreman] would be a turning point for Ms. Ralston.[48]  At the time of that evaluation, following six months in the position, her salary was increased because she had met the expectations of the Company.[49]  Ms. Ralston may quarrel with the rationale behind the Company's business decision to evaluate her in six (6) months, but that is not sufficient to survive summary judgment; rather, such a decision is the very type of management function with which courts are loathe to interfere.  See Elrod, 939 F.2d 1466, 1470  (11th Cir. 1991)(stating that Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions."), quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988); see also Dickinson, 397 F.Supp. 2d at 1343; Chapman, 229 F.3d at 1030 (stating that "it is not appropriate for either the Plaintiff or this Court to recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer").

Finally, Ms. Ralston also points to the fact that she received a raise of 3.5% as compared to the raise received by Ed White of 5%.  However, as explained by Keith West, this was not simply because the Ms. Ralston had just been given an increase in salary at the six (6) month interval as she claims, but, more importantly, because she had not been employed in that position

---

[47] See Deposition of Kevin Cordes, p. 32, line 3-8, attached as Exhibit "KK".
[48] Deposition of Kim Durden, p. 175, line 12 – p. 176, line 7; p.178, line 18 – p. 179, line 1, attached as Exhibit "II".
[49] Deposition of Keith West, p. 40, line 5-9, attached as Exhibit "MM".

for at least one (1) calendar year, contrary to the time Mr. White had been in the position (greater than one calendar year).[50]   In addition, Mr. West testified that bonuses were based on performance, responsibilities and time in the position.[51]   Again, this establishes a legitimate, non-discriminatory basis for the adjustments in base salary of Ralston and White, respectively.

### a.    George Evans

Ms. Ralston references George Evans as an individual who had held the position since June of 2007 that she was eventually selected for (PC Hub Foreman) when Mr. Evans moved to the supervisor's position on the night shift.   It is important to point out a number of fatal flaws to Ms. Ralston's position on this issue.   In September of 2002, Mr. Evans was promoted to Production Control Foreman.[52]   At the time Ms. Ralston was promoted to Foreman in June of 2007, Mr. Evans had worked at US Helicopter for over nineteen (19) years (including in a supervisory capacity).   In addition, as discussed more fully below, Mr. Evans had over twenty years of experience in the helicopter industry.[53]   Specifically, he served, among other things, as an Aviation Platoon Sergeant, Transportation Senior Sergeant, Aviation Quality Control Supervisor, Aviation Technical Inspector, and Motor Transport Operator.[54]   He also had training in the military in Aviation Maintenance courses for Attack and Observation/Scout Helicopters, Observation/Scout Helicopter Technical Inspector Course, Aviation Mishap Management Course, Basic/Primary/Advanced Leadership Courses, Motor Transport Operator Course, and

---

[50] See Affidavit of Keith West, Exhibit "Y".
[51] Deposition of Keith West, p. 38, line 19 - p. 39, line 6, attached as Exhibit "MM."
[52] See Payroll Change Notice, Exhibit "DD".
[53] See Resume of George Evans, Exhibit "FF".
[54] Id.

other training in Battalion Leadership and Inspection of Aircraft.[55]   Mr. Evans had also served as

a Senior Helicopter Mechanic prior to his promotion to Aviation First Sergeant in the military.[56]

While Ms. Ralston claims that she trained Mr. Evans on "virtually every aspect of his

job", including all phases of the helicopter assembly and rebuilds, she admitted in her deposition

that she had never worked on a helicopter and had not assembled a helicopter or performed a

rebuild.[57]   In addition, Ms. Ralston did not have any experience in the helicopter industry prior to

coming to work at US Helicopter in 2001; she previously had worked at a local grocery store as

an assistant manager.[58]   Unlike Evans, Ms. Ralston had not held a supervisory position at US

Helicopter at the time she applied for the foreman position.   Ms. Ralston was initially hired at

U.S. Helicopter as a PC Processor and she remained in that position until she was promoted to a

PC Hub Foreman on June 23, 2007.[59]   When George Evans was promoted to PC Hub Foreman in

2007, he was earning a salary of $17.42 per hour.[60]   Mr. Evans, who had held the position as a

foreman from September 23, 2002, until April 27, 2007, earned $48,925.03 at the time he left the

PC Foreman position on April 27, 2007.[61]   Thus, <u>Ms. Ralston claims that she was entitled to start</u>

<u>at the same salary as Mr. Evans (who had held the position for the entire five (5) years preceding</u>

<u>her promotion into the job.)</u>[62]   In other words, <u>she is comparing her starting salary to what</u>

<u>George Evans was receiving at the time he left this position after working in that capacity for the</u>

<u>five (5) years preceding her hiring in this role.</u>

---

[55] <u>Id.</u>
[56] <u>Id.</u>
[57] Deposition of Kim Ralston, p. 25, line 1-17.
[58] <u>See</u> Application for Employment, Exhibit "A".
[59] <u>See</u> Payroll Change Notice, Exhibit "DD".
[60] <u>Id.</u>
[61] <u>See</u> Payroll Change Notice, Exhibit "EE".
[62] <u>Id.</u>

**b.**     **Ed White**

Second, Ms. Ralston compares herself to another PC Foreman in her department, Ed White. Despite Ms. Ralston's contentions, the evidence presented reflects that Mr. White, while also working in the Production Department, had completely different responsibilities than Ms. Ralston.[63]   Mr. White is the Production Control Foreman who assisted the Production Control Supervisor in the day to day operations of the Production Control process.   In addition, Mr. White initiated and maintained aircraft records required by existing publications and posts required to allied records as assigned.  He also assisted maintenance and inspection personnel in preparation for weighing of aircraft, and performed weight and balance technician functions. Mr. White also assumed full responsibility against divulging material information pertinent to security, company or departmental policy and prepared and maintained in office files. Ms. Ralston did not have any of these specific tasks.[64]

In addition, Mr. White had different (and much greater) experience than Ms. Ralston in this job area.   Mr. White had fourteen (14) years in experience with the US Military.  In the military, Mr. White was an aircraft mechanic and Maintenance Control Chief in which he coordinated and managed all maintenance operations for Marine Light Attach Helicopter Squadron consisting of over 200 maintenance personnel.[65]   While Ms. Ralston contends that working on helicopters was not necessary in her position; the fact remains that US Helicopter is in the business of refurbishing helicopters and experiencing working on helicopters has value.

---

[63] Deposition of Keith West, p. 35, line 22 – 36, line 4, attached as Exhibit "MM".
[64] See Affidavit of Keith West, Exhibit "Y".
[65] See Resume of Ed White, Exhibit "CC".

### c.     Kim Ralston

Ms. Ralston, nonetheless, attempts to show that US Helicopter's reasons for paying her less than Evans or White are mere pretext for discrimination in pay.  In doing so, she points to her experience working for six (6) years <u>in a non-supervisory position</u> at US Helicopter as a Production Control processor and favorable performance reviews during that time-period.  However, she again ignores the comments about her unsatisfactory relationship with co-employees also contained within these performance reviews.

She also states that her experience working as a grocery assistant store manager at Food World training cashiers and at a contracting company, R.G.I.S., training team members "stacks up well" beside the work done by Evans and White.  However, even looking beyond the surface, those positions were in no way comparable to the work being done at US Helicopter (or to the roles served by Evans and White in the military at US Helicopter).  Just because Ms. Ralston disagrees with US Helicopter's evaluations of her work experience and past performance in a supervisory role, when compared to the resumes of both Evans and White, the bottom line is that her background was in no way on an equal level as that of Evans and White.  Clearly, the discrepancies discussed above are not pretextual in any form or fashion; instead, they are the plain and simple differences in the backgrounds and real work/military experience of these three individuals.

### 2.     <u>Disparate Treatment/Pay Pursuant to the EPA.</u>

#### a.     Ms. Ralston's *Prima Facie* Case

To establish a claim under the EPA, a Ms. Ralston must meet the  strict standard of showing that an "employer pays different wages to employees of opposite sexes 'for equal work

on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989), *quoting* Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)); see 29 U.S.C. § 206(d)(1); see also Lampkin v. United Parcel Serv., 2008 WL 1925120, at *4 (M.D. Ala. May 1, 2008).   In doing so, Plaintiff was must affirmatively demonstrate that a "factor other than sex" was the reason for any pay disparity; this exception applies when the pay disparity results from unique characteristics of the same job, such as experience, training, or ability (or from special exigent circumstances connected with the business. Glenn v. General Motors Corp., 841 F.2d 1567, 1571 (11th Cir. 1988).   Ms. Ralston asserts in her brief that "Defendant has shown none of these factors." (Doc. #39; p. 32). However, nothing could be farther from the truth.

Ms. Ralston has not identified any job at U.S. Helicopter in which a similarly-situated male is, or has, performed of equal skill, responsibility and effort under similar working conditions.   To this point, as discussed at length, the positions held by Ms. Ralston (as Production Control Hub Foreman) and George Evans (as Production Control Foreman) and Mr. White (as Production Control Foreman) were -- at best – "superficially alike" because they held similar job titles. Nevertheless, the undisputed material facts prove that Mr. Evans's and Mr. White's actual job duties were significantly different from Ms. Ralston's.  First, as explained, George Evans had ample supervisory and work experience at US Helicopter when compared to Ralston's.[66]  Mr. Evans had worked at US Helicopter for over nineteen (19) years (as both a general mechanic and in the supervisory Foreman position).[67]   Mr. Evans, unlike Ms. Ralston,

---

[66] See Resume of George Evans, Exhibit "FF".
[67] Id.

had held a supervisory position at US Helicopter previously.[68]   In addition, as explained in detail above, Mr. Evans had over twenty years of experience in the helicopter industry, working in both a leadership and "hands-on" capacity in and around helicopter aircraft.[69]   Despite Plaintiff's incorrect claims that she had to "train" Mr. Evans on the job, the simple fact of the matter is that the Plaintiff's experience in the helicopter industry, when compared to Mr. Evans's time working in and around helicopters, is the epitome of an "apples to oranges" analysis.

Moreover, Ed White had a different job than Ms. Ralston, and, further, performed multiple tasks in addition to those performed by Plaintiff.   Specifically, while Ms. Ralston's basic job function was to serve and assist the Production Control Supervisor, Mr. White had significantly more job responsibility that the Ms. Ralston.[70]   In addition to serving and assisting the Production Control Supervisor, Mr. White also initiated and maintained aircraft records required by existing publications, posting the required information to allied records as assigned[71]. Mr. White also assisted maintenance and inspection personnel in preparation for weighing of aircraft, and performed weight and balance technician functions.[72] Mr. White also assumed full responsibility against divulging material information pertinent to security, company or departmental policy.[73] Kim Ralston was not required to perform any of these specific tasks. Regardless of whether "Ralston knew how to do White's job", as Plaintiff claims, the bottom line is that she was not doing his job.  His job was much more expansive and certainly went above and beyond the simple responsibility "for managing documents related to the work flow in refurbishing the helicopters" as Plaintiff alleges (Doc. #39, p. 32).

---

[68] Id.
[69] Id.
[70] See Affidavit of Keith West, Exhibit "Y".
[71] Id.
[72] Id.
[73] Id.

Thus, Evans's and White's positions as Production Control Foremen were different jobs, with different responsibilities and required different skill sets, than that of the Ms. Ralston's position as Production Control Hub Foreman. As such, Ms. Ralston has failed to show that there was any similarly situated male employee working under similar conditions at US Helicopter receiving higher pay while performing a job which required equal skill, effort, and responsibility.

### b.      **"Factors Other Than Sex."**

US Helicopter properly relied upon a host of factors, including employment history, education, prior experience (or lack thereof) when determining the initial salaries for White and the Ms. Ralston.[74]   More specifically, before Mr. White was hired by US Helicopter, he was a member of the United States Marine Corps. In the United States Marine Corps, Mr. White held a variety of positions including coordinating and managing all maintenance operations for Marine Light Attack Helicopter Squadron consisting of over 200 maintenance personnel. He also served as a Senior Maintenance Department Supervisor for this same squadron during Operation Iraqi Freedom.   In addition, Mr. White, while in the United States Marine Corps, served as a Quality Assurance Supervisor and as an aircraft mechanic.[75]

George Evans's experience and background are equally distinguishable, as set forth above.[76]   Specifically, he served, among other things, as an Aviation Platoon Sergeant, Transportation Senior Sergeant, Aviation Quality Control Supervisor, Aviation Technical Inspector, and Motor Transport Operator.[77]   He also had training in the military in Aviation Maintenance courses for Attack and Observation/Scout Helicopters, Observation/Scout Helicopter Technical Inspector Course, Aviation Mishap Management Course,

---

[74] Kim Durden, p. 174, line 19 – p. 175, line 8; p. 182, line 14-23, attached as Exhibit "II".
[75] See Resume of Ed White, Exhibit "CC".
[76] See Resume of George Evans, Exhibit "FF".
[77] Id.

27

Basic/Primary/Advanced Leadership Courses, Motor Transport Operator Course, and other training in Battalion Leadership and Inspection of Aircraft.[78] Mr. Evans had also served as a Senior Helicopter Mechanic prior to his promotion to Aviation First Sergeant in the military.[79] Ms. Ralston, on the other hand, had no experience, either in the military or working with helicopters, before joining US Helicopter.[80]

In addition to the factors noted above, the difference between Ms. Ralston's pay and that of her comparators was based on the fact that she performed her job less favorably, demonstrated less ability, and assumed less responsibility. Despite her claims of favorable reviews, Plaintiff conveniently leaves out the fact that these evaluations also point out that she consistently received negative feedback regarding her inability to follow instructions, lack of initiative, refusal to carry out assigned work, and, primarily, her inability to get along, and her lack of cooperation, with other employees. She had repeatedly received Letters of Warning regarding these deficiencies, and comments were also made on annual performance appraisals. Ms. Ralston was counseled on numerous occasions and her employment was suspended <u>twice</u> for refusal to complete assignments or confrontation with other employees.  During her tenure with US Helicopter, Ms. Ralston was counseled and/or suspended in 2003, 2004, 2006, and 2008, often times on multiple occasions in the span of one year's time. Because of the numerous counseling incidents, as well as suspensions, Ms. Ralston was terminated for insubordination.

Contrary to Plaintiff's claims that "any differences in experience and training became irrelevant since any specific training held by Evans and White did not result in any difference in job assignments or Ralston's ability to do the job that she, Evans, and White shared" (doc. #39,

---

[78] <u>Id.</u>
[79] <u>Id.</u>
[80] <u>See</u> Application for Employment, Exhibit "A".

p. 33), the record is clear to the conclusion that both George Evans and Ed White assumed additional tasks and responsibilities beyond those performed by Ralston.  In addition to the discrepancies in the amount of work and job tasks undertaken by Mr. Evans, Mr. White and Ms. Ralston, Ms. Ralston had significantly less prior work experience and education than Mr. White in the helicopter industry. Finally, Ms. Ralston's extensive history of job deficiencies and behavioral problems were "factor[s] other than sex" leading US Helicopter to pay Ms. Ralston less than either Mr. Evans or Mr. White.

Put simply, US Helicopter relied more heavily on the abilities of Evans and White to deliver their respective job duties, and they consistently did so. Ralston's job duties were not only far less important to the overall scheme of US Helicopter's business, and far fewer than those of Evans or White, but Ralston was repeatedly reprimanded and warned, and failed to deliver despite less burdensome job requirements. Thus, it is undeniable that US Helicopter has "reasons other than sex" for Ralston's salary.

### D. RALSTON HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

#### 1. *Prima Facie* Case.

Ms. Ralston likewise cannot establish a prima facie case of retaliation under Title VII. To maintain a claim for retaliation pursuant to Title VII, an employee must prove that:  (1) she engaged in protective activity in opposition to Title VII discrimination; (2) simultaneously or subsequent to the protected opposition, she suffered an adverse employment action; and (3) there is a causal connection or link between the participation and the protected activity and the adverse employment decision.  See, e.g., Pipkins v. City of Temple Terrace, Florida, 267 F.3d 1197,

29

1201 (11th Cir. 2001); <u>Tipton v. Canadian Imperial Bank of Commerce</u>, 872 F.2d 1491, 1494

(11th Cir. 1989); <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1197 (11th Cir. 1997).  In

proving causation, while circumstantial evidence can be used, speculation is not sufficient.  <u>See</u>

<u>Clover v. Total System Services, Inc.</u>, 176 F.3d 1346, 1355-56 & n. 4 (11th Cir. 1999).  Indeed,

"it does not follow,..., that every time a person engages in constitutionally protected activity

within a short time prior to an adverse employment decision that an inference may reasonably be

drawn that they were related.  Every act of expression is not equally as likely to draw a negative

response from an employer as every other; <u>for the link to be made, it must be reasonable to</u>

<u>assume that the employer had cause to retaliate.</u>"  <u>Mize v. Jefferson City Bd. of Education</u>, 93 F.

3d 739, 745 (11th Cir. 1996)(emphasis added).

     Here, Plaintiff Ralston cannot establish a prima facie case of retaliation as she cannot

prove a "causal connection between the participation in the protected activity and the adverse

employment action."  It is important to point out that Ralston does not contend in her brief that

her termination was the result of complaints made about discriminatory conduct and, indeed, she

could not do so.  It is undisputed that Ralston was terminated on March 28, 2008.  It is further

undisputed that, <u>before her termination, she made no specific complaints to anyone at US</u>

<u>Helicopter about any alleged gender discrimination by Mr. Evans</u>. While Ms. Ralston states in

her Charge of Discrimination that she did complain in 2006 that Mr. Evans discriminated against

her; in her 2006 evaluation, there is no mention of same.  <u>See</u> Plaintiff's Exhibits "L" and "M".

Furthermore, despite Ms. Ralston's allegations she was retaliated against as to promotions, she

was actually offered two promotions (one of which she refused) after allegedly making such a

claim, thereby making these allegations incorrect.  See Exhibits "D" and "V" to Defendant's prior Evidentiary Submission.

In support of her retaliation claim, Plaintiff, instead, relies solely on an assertion that she was "retaliated for complaining about her discriminatory pay, particularly when she complained about the difference between her annual raise of 3.5% and Ed White's annual raise of 5% on February 28, 2008." (Doc. #39, pp. 47-48).  First, as explained above, both Kim Durden and her supervisor at the time, Mr. Kevin Cordes, recommended Ms. Ralston for the position.[81]   In addition, as also explained, Mr. Cordes did not even know what Plaintiff's salary was and certainly did not specifically tell her what it would be.[82]   At US Helicopter, salaries are determined by several factors, including, but not limited to, experience, education, and employee history.[83]  As also stated, Ms. Durden testified that she advised Ms. Ralston that Ms. Ralston's salary would be evaluated after six months; Ms. Ralston's pay was subsequently adjusted following a six month evaluation.[84]  If she truly was being retaliated against, why adjust her pay at all?

Nevertheless, Ms. Ralston further alleges that she was paid only a 3.5% pay increase; whereas, other male employees in similar positions received higher increases.  That is incorrect. As explained again, Ms. Ralston's pay increase was pro-rated because she had not been in the position for an entire year -- she had only been in the position since June 2007.  Based on the foregoing undisputed facts, US Helicopter denies that Ms. Ralston engaged in any protected activity.  Furthermore, the only time she made any complaints she was being discriminated

---

[81]  See Deposition of Kim Durden, p. 154, line 17 – p. 155, line 2, attached as Exhibit "II:; Deposition of Kevin Cordes, p. 29, line 20-30, attached as Exhibit "KK".
[82]  Deposition of Kevin Cordes, p. 32, line 3 – p. 33, line 3, attached as Exhibit "KK".
[83]  See Affidavit of Keith West, Exhibit "Y".
[84]  Deposition of Kim Durden, p. 175, line 21 – p. 176, line 17; p. 178, line 1-7; p. 192, line 13-14, attached as Exhibit "II".

against was the date she was terminated, March 28, 2008.   In sum, while employed at US Helicopter, Ralston did not conduct a protected activity, such as complain to upper management or file a notice with the EEOC.   Plaintiff Ralston did not file her Notice of Charge of Discrimination until June 13, 2008.   Moreover, as shown, she did not complain of any gender discrimination by Mr. Evans until the day she was terminated.   Even then, Ms. Ralston did not make a specific claim for the reasons she believed she was discriminated; instead, she simply made a generalized statement.   In addition, she did not state how Mr. Evans was discriminating against her.[85]   Finally, Plaintiff cannot show that the legitimate, non-discriminatory basis for the adjustment in salary of 3.5% was pretext for any complaints made about the raise.   Thus, she cannot possibly establish that her termination, the adjustment in salary, and her subsequent notice to the EEOC were linked.   Her retaliation claim should be dismissed accordingly.

### 2.   US Helicopter has a legitimate, non-retaliatory reason for Ms. Ralston's termination.

Even assuming, *arguendo*, Ms. Ralston established a prima facie case of retaliation, which she has not, US Helicopter had legitimate, non–retaliatory reasons for her termination.   As argued *supra*, US Helicopter specifically terminated Ms. Ralston for insubordination in addition to her prior numerous verbal and written counselings.   Because US Helicopter has articulated legitimate, non-retaliatory reasons for Ms. Ralston's termination, it is entitled to judgment on Ms. Ralston's retaliation claim as a matter of law.

### 3.   Ms. Ralston cannot show that US Helicopter's legitimate, non-discriminatory reasons for her termination were mere pretext for retaliation.

As before, Ms. Ralston's personal feelings and opinions in this regard alone cannot establish pretext; quite simply, she is not permitted to "substitute [her] business judgment for that

---

[85] Id.

32

of the employer." <u>Chapman v. AI Transport</u>, 29 F.3d 1012, 1030 (11th Cir. 2000)(*en banc*). Stated differently, once US Helicopter has described its non-discriminatory, legitimate reasons for Ms. Ralston's termination, she "cannot succeed by simply quarreling with the wisdom of [those] reason[s]." <u>Id.</u> Finally, Ms. Ralston cannot prove pretext, and, in turn, survive summary judgment by merely making speculative, conclusory allegations of retaliation. <u>See, e.g.</u>, <u>Rojas v. Florida</u>, 285 F.3d 1339, 1342 (11th Cir. 2002); <u>Carter v. Miami</u>, 870 F.2d 578, 581-82 (11th Cir. 1989); <u>see also Mayfield v. Patterson Plumbing Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996).

As explained above, other than her own personal feelings, Ms. Ralston cannot show that US Helicopter's legitimate, non-discriminatory reasons for her termination were mere pretext for retaliation. Moreover, she cannot show that rationale given for her adjustment in salary in some way masked a discriminatory motive. Thus, summary judgment should be granted relative to her claim for retaliation.

## III.   <u>CONCLUSION.</u>

Defendant US Helicopter has met its burden to demonstrate there is no genuine issue of material fact and US Helicopter is, therefore, entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, US Helicopter respectfully requests this Court grant its Motion for Summary Judgment as to all Plaintiff Ralston's claims.


Respectfully submitted,


*/s/ Martha Leach Thompson*
Martha Leach Thompson
H. Cannon Lawley
David Fleming


33

**OF COUNSEL:**

Huie, Fernambucq & Stewart, LLP
2801 Highway 280 South, Suite 200
Birmingham, AL  35223
Telephone:  (205) 251-1193
Facsimile:  (205) 251-1256

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel of record via the CM/ECF System and/or by U.S. Mail on this the 22nd day of April, 2010.

Bobbie S. Crook, Esq.
367 South Saint Andrews Street
Dothan, AL 36301

Ann C. Robertson, Esq.
Susan Donahue, Esq.
Wiggins Childs Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

*/s/ Martha Leach Thompson*
Of Counsel